**[Cite as *State v. Ruf*, 2020-Ohio-3988.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-58 |
| | : | |
| TIMOTHY WILLIAM RUF | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

MISTY M. CONNORS, Atty. Reg. No. 0075457, P.O. Box 340246, Dayton, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Timothy William Ruf appeals from his conviction following a jury trial on one count of sexual battery in violation of R.C. 2907.03(A)(2).

{¶ 2} Ruf advances two assignments of error. First, he contends nearly constant references to his being the alleged victim's former stepfather deprived him of a fair trial. Second, he claims ineffective assistance of counsel based on his attorney's failure to object to the references about his being the alleged victim's former stepfather.

{¶ 3} The record reflects that Ruf was indicted on four counts of rape in violation of R.C. 2907.02(A)(1)(c). The indictment alleged that Ruf digitally penetrated the victim's vagina, performed cunnilingus on her, penetrated her vagina with his penis, and had her perform fellatio on him. The indictment further alleged that the victim's ability to resist or consent to the foregoing acts was substantially impaired because of a mental or physical condition and that Ruf knew or had reasonable cause to believe the victim's ability to resist or consent was substantially impaired because of a mental or physical condition. Prior to trial the State dismissed three of the counts, leaving only count four, which involved Ruf's penetrating the victim's vagina with his penis.

{¶ 4} On April 8, 2019, Ruf filed a pretrial motion in limine. Therein, he sought to exclude evidence about the victim's having been his step-daughter for many years and his having been the victim's step-father. Ruf argued that the existence of this relationship was irrelevant to the charge of rape. Even if the relationship had some relevance, he argued that the prejudicial effect of a jury's hearing about sexual conduct with his former step-daughter would substantially outweigh any probative value of such evidence. Therefore, Ruf asserted that evidence about his relationship with the victim was subject

to exclusion under Evid.R. 402 and 403.

{¶ 5} The State filed a memorandum in opposition to the motion in limine, arguing as follows:

The State anticipates that an essential fact of dispute will be whether or not the sexual encounter between the Defendant and the victim was consensual. It is the State's understanding that the Defendant will allege that the victim was the sexual aggressor and seduced and/or initiated the sexual encounter. In determining consent and evaluating the credibility of the Defendant's claim that the victim was the sexual aggressor it is appropriate and relevant for a fact finder to know about the nature of the victim's relationship with the Defendant as a step-father. The fact that the Defendant has known the victim as his step-daughter for many years will assist the jurors in evaluating the following issues:

1. Why the victim would not view the Defendant as a romantic partner.

2. Why the victim would be repulsed by the idea of having sex with the Defendant.

3. Why the victim might view the Defendant's acts of kindness in allowing her to stay at his residence as an act of love for a daughter rather than an act of a paramour.

4. Why the victim would not view the evening out, on the night in question, as a date.

5. The level of trust the victim would have with the Defendant.

6. The knowledge the victim has of the Defendant's residence.

7. The credibility of the parties when evaluating their testimony.

(State's April 22, 2019 Response to Motion in Limine at 2.)

{¶ 6} In an April 23, 2019 entry, the trial court overruled Ruf's motion in limine, reasoning:

The Court finds that consent to the sexual activity is at issue and therefore an examination into the relationship between the parties to be relevant factors for the trier of fact to consider.

The Court finds listed factors 1 through 6 as named on page 2 of the State's Responsive Memorandum as relevant to a determination of the issue of consent. Evid.R. 401. The Court finds that the depth and breadth of any prior relationship between the parties and exploration of the dynamics of that relationship is necessary in order to fully evaluate whether the alleged sexual activity was consensual.

The Court finds that pursuant to Evid.R. 403(A), the probative value of the evidence is no[t] substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the trier of fact.

{¶ 7} At trial, the 22-year-old victim testified that 49-year-old Ruf had served as a father figure for her entire life.[1] Ruf and the victim's mother had been married until approximately two years before trial. Although Ruf was not the victim's biological father, she grew up with him and enjoyed a father-daughter relationship with him. (Trial Tr. at 181-182.) She was living in Ruf's house at the time of the incident in question. Prior to

---

[1] The record reflects that the victim's mother moved in with Ruf when the victim was seven months old. (Trial Tr. at 301.)

that incident, she always had referred to him as "dad." (*Id.* at 183-185.) Other witnesses at trial also testified about Ruf's being the victim's step-father, the victim's being his step-daughter, and the existence of a father-daughter type relationship between them.

{¶ 8} With regard to the incident at issue, the victim testified that on February 9, 2019, Ruf invited her out for drinks with him. They proceeded to have drinks at two private clubs. Ruf introduced the victim to people at both clubs by referring to her as his daughter. (*Id.* at 187, 189.) After having a few drinks, the victim began feeling "really drunk." She vomited outside of the second club before returning to Ruf's house with him. (*Id.* at 192-193.) According to the victim, Ruf forced himself on her sexually not long after they entered the house. She remembered him pushing her down, trying to pull her pants down, and then putting his penis inside of her vagina. (*Id.* at 194-196.) After the incident, the victim put her clothes back on and ran out of the house. She was assisted by friends who picked her up in their car. She then went to the hospital and spoke to police. (*Id.* at 197-199.)

{¶ 9} The victim denied having done anything to make Ruf believe she wanted to have sex with him. When asked on direct examination why she did not want to engage in sexual activity with Ruf, the victim responded: "Because he's my father." (*Id.* at 200.) Other witnesses also referred to Ruf and the victim as "father" and "daughter," or "step-father" and "step-daughter," or as having that type of relationship.

{¶ 10} For his part, Ruf testified and admitted engaging in sexual conduct with the victim. According to Ruf, he observed the victim masturbating in his house shortly after they returned home. (*Id.* at 526-527.) He testified that she told him she was "horny" before pulling him down beside her. Ruf proceeded to "finger" her vagina for a few minutes while

she masturbated. (*Id.* at 530.) He testified that they then removed their own pants and engaged in various acts of sexual conduct, including cunnilingus, fellatio, and vaginal intercourse, for 15 to 20 minutes. (*Id.* at 533-543.) Afterward, he got dressed and went to his own bed. (*Id.* at 543.) Ruf testified that the victim appeared to be enjoying the sexual activity in which she was participating voluntarily and that she did not seem too drunk to make decisions. (*Id.* at 533-543, 545-546.)

{¶ 11} Based on the evidence presented, the jury acquitted Ruf of rape. It found him guilty of the lesser-included offense of sexual battery in violation of R.C. 2907.03(A)(2) for engaging in sexual conduct with the victim while knowing that her ability to appraise the nature of or control her conduct was substantially impaired. The trial court imposed a five-year prison term. This appeal followed.

{¶ 12} In his two assignments of error, Ruf contends the trial court should have precluded references to his being the victim's former step-father. As in his motion in limine, he argues that his status as the victim's step-father was not relevant to any issue in the case. Alternatively, he argues that any marginal relevance was substantially outweighed by the danger of unfair prejudice. He also alleges ineffective assistance of counsel based on his attorney's failure to raise the issue at trial by objecting when he was identified as the victim's step-father.

{¶ 13} Upon review, we find Ruf's assignments of error to be without merit. At trial, Ruf admitted engaging in sexual intercourse with the victim. For purposes of the rape charge, a key issue in dispute was whether the victim's ability to resist or consent was substantially impaired. Similarly, with regard to the sexual battery charge, a key issue in dispute was whether the victim's ability to appraise the nature of or control her conduct

was substantially impaired. In our view, Ruf's long-time status as the victim's step-father was relevant to these issues, as was the fact that the victim considered him to be her father and maintained a father-daughter relationship with him.

{¶ 14} In the context of this case, testimony about Ruf's being the victim's stepfather, being considered her father, and maintaining a father-daughter relationship with her had a tendency to make it more probable that her ability to resist or consent was substantially impaired. Such testimony also had a tendency to make it more probable that her ability to appraise the nature of or control her conduct was substantially impaired. This is so because the victim testified that she had no desire to engage in sexual activity with Ruf specifically because she considered him to be her father. Given that the victim did not want to engage in sexual activity with a person she viewed as her father, the jury reasonably could have inferred that she was substantially impaired when she and Ruf did engage in sexual activity. Therefore, the evidence about which Ruf complains was relevant under Evid.R. 401.

{¶ 15} In addition to supporting an inference that she was substantially impaired, the evidence at issue was relevant to other issues as well. As recognized by the trial court in its liminal ruling, the nature of Ruf's relationship with the victim helped the jury understand:

1. Why the victim would not view the Defendant as a romantic partner.

2. Why the victim would be repulsed by the idea of having sex with the Defendant.

3. Why the victim might view the Defendant's acts of kindness in allowing her to stay at his residence as an act of love for a daughter rather than an

act of a paramour.

4. Why the victim would not view the evening out, on the night in question, as a date.

5. The level of trust the victim would have with the Defendant.

6. The knowledge the victim has of the Defendant's residence.

(April 23, 2019 Entry, citing factors found in State's Response to Motion in Limine.)

{¶ 16} Finally, we are unpersuaded that references to Ruf's status as the victim's step-father should have been excluded under Evid.R. 403(A) on the basis that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. Given that the nature of Ruf's relationship with the victim explained why she did not want to have sex with him and inferentially made it more probable that she was substantially impaired when they did have sex, we believe the trial court correctly overruled the motion in limine. In reaching this conclusion, we note that the references to Ruf's relationship with the victim do not appear to have been calculated or intended to gratuitously inflame any passion or prejudice in the jury. The simple fact is that Ruf had been the victim's step-father for most of her life, and they had maintained a father-daughter type of relationship. This fact was recognized by several witnesses, and it was relevant to material issues in the case. Even if we overlook Ruf's failure to preserve his challenge by objecting at trial, we are unpersuaded that allowing the testimony about which he complains deprived him of a fair trial.

{¶ 17} Having found that the evidence at issue was admissible, we also see no ineffective assistance of counsel arising from defense counsel's failure to object to the evidence at trial. It is axiomatic that an attorney does not provide deficient representation

by failing to object to relevant, admissible evidence.

{¶ 18} Ruf's assignments of error are overruled, and the judgment of the Champaign County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Samantha B. Whetherholt
Misty M. Connors
Hon. Nick A. Selvaggio